No. 05-15-00907-CR **535-16**

In The

Court Of Criminal Appeals

For

Austin, Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 17 2016

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

JUN 17 2016

Abel Acosta, Clerk

Jerete Michael Valdez,
                    Appellate

VS.

The State Of Texas,
                    Appellee.

Appeal From The Court Of Appeals

For The

Fifth Judicial District Of Texas

Dallas, Texas

Before Justices Fillmore, Stoddart,
And Schenck

In The

Court Of Criminal Appeals

For

Austin, Texas

---

Jerete Michael Valdez,
Appellate

Vs.

State Of Texas,
Appellee

---

Appellant's Petition

To The Honorable Justices Of The Court Of Criminal Appeals:

This Petition Is Respectfully Submitted On The Pro Se Appellant, Jerete Michael Valdez. The Parties Will Be Indentified As Appellant And State (Appellee). The Reporter's Record Will Be Identified As (RR) And The Clerk's Record Will Be Indentified As (CR).

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . i

INDEX OF AUTHORITIES . . . . . . ii

INDENTITIES OF ALL PARTIES . . . . iii

STATEMENT REGUARDING ORAL ARGUMENT . . . 1

STATEMENT OF THE CASE . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY . . . 2

GROUND FOR REVIEW . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . 4

PRAYER . . . . . . . . . . . 19

PETITION FOR DISCRETIONARY REVIEW
( JERETE VALDEZ PRO SE )

# Index Of Authorities

- CASES-

Fancher V. State, 659 S.W. 2d 836, 839 (Tex. Crim. App. 1983)... 4,5

Scheckloth V. Bustamonte, 412 U.S. 218, 219-227 (1973)... 5, 12, 16

Reasor V. State, 988 S.W. 2d 877, 881-882 (Tex. App. San-Antontio 1999)... 5

Carmouche V. State 10 S.W. 3d 323 (Tex. Crim. App. 2000)... 5, 9, 11, 14

State V. Duran, 396 S.W. 3d 563 (Tex. Crim. App. 2013)... 10

Johnson V. State, 803 S.W. 2d 272, 287 (Tex. Crim. App. 1990) Overruled on other Grounds... 11

Heiman V. State, 815 S.W. 2d 681, 685 (Tex. Crim. App. 1991)... 11

State V. Addington, 588 S.W. 2d 569, 570 (Tex. 1979)... 14, 15

Young V. State 648 S.W. 2d 2,3 (Tex. Crim. App. 1983)... 14

# IDENTITIES OF ALL PARTIES

- APPELLANT -

JERETE MICHAEL VALDEZ

- ATTORNEY FOR APPELLANT AT TRIAL AND ON APPEAL -

STEPHANIE HUDSON

STEPHANIE DUECKER HUDSON, PLLC

1333 W. McDERMOTT DR., SUITE 200

ALLEN, TX 75013

469-519-7815 / 972-530-6218 FAX

STATE BAR No. 24007130 / SMDHUDSON@GMAIL.COM

- PRESENTING AUTHORITY AT TRIAL AND ON APPEAL FOR STATE -

- APPELLEE -

THE STATE OF TEXAS

GREG WILLIS

CRIMINAL DISTRICT ATTORNEY

2100 BLOOMDALE RD., SUITE 20004

McKINNEY, TX 75071

- ASSISTANT DISTRICT ATTORNEY -

CHRIS FREDERICKS STATE BAR No. 24044565

## STATEMENT REGUARDING ORAL ARGUEMENTS

THE APPELLANT DOES NOT BELIEVE ORAL ARGUEMENTS WILL ASSIST THE COURT IN DEVELOPING THE ISSUES IN THE CASE. HOWEVER, IF ORAL ARGUEMENT IS GRANTED TO APPELLEE, THE APPELLATE REQUESTS THE OPPORTUNITY TO RESPOND.

## STATEMENT OF THE CASE

APPELLANT WAS CHARGED BY INDICTMENT FOR SECOND DEGREE FELONY OFFENSE OF BURGLARY OF A HABITATION. (CR P. 8) A JURY WAS WAIVED AND A TRIAL BEFORE THE COURT COMMENCED. (RR V. 2 p. 20) THE COURT FOUND APPELLANT GUILTY AND AFTER APPELLANT PLEAD TRUE TO TWO ENHANCEMENT PARAGRAPHS, THE COURT ASSESSED PUNISHMENT AT TWENTY-FIVE YEARS IN THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISON. (RR v. 3 pp. 51, 56) NOTICE OF APPEAL WAS TIMELY FILED. (CR p. 55)

# STATEMENT OF PROCEDURAL HISTORY

## COURT OF APPEALS

## FIFTH DISTRICT OF TEXAS AT DALLAS

# JUDGMENT

JERETE MICHAEL VALDEZ,
                    APPELLANT

No. 05-15-00907 V.

THE STATE OF TEXAS,
                    APPELLEE

ON APPEAL FROM THE
199TH JUDICIAL DISTRICT
COURT, COLLIN COUNTY, TEXAS
TRIAL COURT CAUSE NO. 199-81833-2014
OPINION DELIVERED BY
JUSTICE STODDART. JUSTICE
FILLMORE AND SCHENCK
PARTICIPATING.

BASE ON THE COURT'S OPINION OF THIS DATE,
THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.

JUDGMENT ENTERED THIS 30TH OF MARCH, 2016.

# GROUNDS FOR REVIEW

1.) THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

2.) THE COURT OF APPEALS ERRED IN CONCLUDING THAT APPELLANT VOLUNTARILY GRANTED CONSENT TO SEARCH.

# ARGUEMENT

APPELLATE CONTENDS THAT THE TRIAL COURT ABUSED ITS DISCRETION, THEREBY VIOLATING APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTIUTION, ARTICLE I, SECTION 9 OF THE TEXAS CONSTITUTION, AND ARTICLE 38.23 OF THE TEXAS CODE OF CRIMINAL PROCEDURE, WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS SINCE THE STATE FAILED TO SHOW THAT CONSENT FOR A WARRANTLESS SEARCH OF APPELLANT'S CAR WAS GIVEN THROUGH A POSITIVE AND UNEQUIVOCAL ACT AND NOT MERE PEACEFUL SUBMISSION TO A CLAIM OF AUTHORITY.

A SEARCH CONDUCTED WITHOUT A WARRANT IS PER SE UNREASONABLE AND, THEREFORE, ILLEGAL UNDER THE FOURTH AMENDMENT. FANCHER V. STATE, 659 S.W. 2d 836, 839 (TEX. CRIM. APP. 1983).

THE CONSTITUTIONAL PROSCRIPTIONS AGAINST WARRANTLESS SEARCHES AND SEIZURES DO NOT COME INTO PLAY WHEN A PERSON GIVES FREE AND VOLUNTARY CONSENT TO A SEARCH. WHETHER CONSENT WAS GIVEN FREELY AND VOLUNTARILY IS TO BE ANSWERED BY LOOKING AT THE TOTALITY OF THE CIRCUMSTANCES SURROUNDING THE CONSENT. SCHECKLOTH V. BUSTAMONTE, 412 U.S. 218, 219-227 (1973); FANCHER V. STATE, 659 S.W. 2d 836, 839 (TEX. CRIM. APP. 1983). THE STATE MUST PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CONSENT TO SEARCH WAS FREELY GIVEN. SEE STATE V. IBARRA, 953 S.W. 2d 242, 244-245 (TEX. CRIM. APP. 1997); FANCHER V. STATE, 659 S.W. 2d 839 (TEX. CRIM. APP. 1983); REASOR V. STATE, 988 S.W. 2d 877, 881-882 (TEX. APP. SAN-ANTONIO 1999); CARMOUCHE V. STATE 10 S.W. 3d 323 (TEX. CRIM. APP. 2000).

EVIDENCE PRESENTED AT TRIAL WAS THAT AFTER BEING INVOLVED IN A CAR ACCIDENT

APPELLANT CALLED 911. (RR V.2 P.11)
AFTER THE POLICE CLEARED THE ACCIDENT THE
APPELLANT CALLED HIS MOTHER TO TELL HER
WHAT HAPPEN. OFFICER OF THE PLANO POLICE
DEMANDED THE APPELLANT TO GET OFF THE
PHONE. AT THAT POINT, THE APPELLANT
ASKED; "AM I FREE TO GO?", WHICH SHOULD
BE ON THE VIDEO. OFFICER WRIGHT, ARRIVED
WITHIN TEN MINUTES OF THE CALL. (RR V.2 P.23)
SOME OF THE ITEMS THAT SEEMED SUSPICIOUS
WERE SEEN IN THE BACKSEAT OF APPELLANT CAR
AND WERE POINTED OUT TO WRIGHT BY ANOTHER
OFFICER. (RR V.2 PP. 24-25) AT THIS TIME THE
APPELLANT WAS DIRECTLY IN FRONT OF HIS
CAR FROM SHOWING OFFICERS THE DAMAGE THAT
WAS DONE. WRIGHT WALKED OVER TO LOOK IN THE
BACK OF APPELLANT'S CAR, (WHICH WAS ON THE
DRIVER SIDE OF THE CAR), AND BEGAN ASKING
APPELLANT ABOUT THE TOOLS AND POWER WASHER
IN THE CAR. (RR V.2 PP.25-26) WITH OFFICER WRIGHT'S

PETITION FOR DISCRETIONARY REVIEW
(JEZETE VALDEZ) PRO SE

PG 6

HAND ON THE BACK DOOR, ON THE RIGHT SIDE OF THE CAR, WHICH THE APPELLANT WAS ON THE LEFT SIDE NEAR THE BUMPER WITH ABOUT 4-5 OTHER OFFICERS AROUND HIM. OFFICER WRIGHT THEN ASKED APPELLANT IF HE MINDED IF WRIGHT LOOKED INSIDE HIS CAR, TO WHICH APPELLANT RESPONDED, "WELL, I MEAN, YEAH. (RR V.2 P.27) WRIGHT TESTIFIED THAT HE BELIEVED THIS RESPONSE INDICATED THAT APPELLANT HAD CONSENTED TO THE SEARCH OF HIS CAR, AND IMMEDIATELY OPENED THE CAR AND SEARCHED IT. (RR V.2 P.27)

THE APPELLATE ARGUES THAT THE ANSWER TO THE QUESTION WAS IN NO WAY COOPERATING WITH THE OFFICER. THE STATE AND COURT OF APPEALS FAILED TO LISTEN TO THE SPECIFIC QUESTION. OFFICER WRIGHT FAILED TO UNDERSTAND THE ENGLISH LANGUAGE. OFFICER WRIGHT'S SPECIFIC QUESTION, "DO YOU MIND IF I LOOK IN CAR," APPELLANT SAID, "WELL, I MEAN, YEAH." THE APPELLANT WAS RESPONDING, "YES, I DO MIND YOU LOOKING IN MY CAR. THE TRIAL COURT AND THE COURT OF

Appeals Imply Finding That The Appellate's Oral Response To Wright's Question, Combined With Appellate's Demeanor And Nonverbal Gestures, Constitued Consent. Officer Wright Could Not Describe Any Gestures That The Appellant Made. The Appeallate Argues That Officer Wright Was Not Intending To Follow Procedure Or Conduct Proper Police Conduct, In Otherwords, Officer Wright Did Not Listen To Anything The Appellate Had To Say, Officer Wright's Thoughts At That Very Moment Was To Get In The Appellate Car By Any Means Possible, Even If It Or He Broke The Laws Of The United States And Texas Constitution. Officer Wright Action Says It Best, When In The Appellant Car, He Asked; "If This BackPack Belong To You," Or For The Record, "Does Or Is The Back Pack His." Appellant's Response Was, Again, "Well, I Mean, Yeah." (RR v.2 P.55) Interestingly, Appellant Gave The Exact Same Response

TO TWO DIFFERENT QUESTIONS. IN FIRST INSTANCE, WRIGHT INTERPRETS APPELLANT'S ANSWER TO MEAN NO, HE DOES NOT MIND. IN THE SECOND INSTANCE, WRIGHT INTERPRETS THE EXACT SAME LANGUAGE TO MEAN THAT YES, THE BACKPACK DOES BELONG TO APPELLANT. NO REASONABLE PERSON IN THE POSTION OF THE INVESTIGATING OFFICER, TRIAL COURT, AND COURT OF APPEALS COULD POSSIBLY HAVE BELIEVED THAT WHEN APPELLANT RESPOND "WELL, I MEAN, YEAH TO THE QUESTION, "DO YOU MIND IF I LOOK IN YOUR CAR?" THAT HE WAS CLEARLY AND UNEQUIVOCALLY GIVING CONSENT TO SEARCH HIS CAR. ALSO ARGUING, THE FACT THAT THE APPELLANT'S NONVERBAL ISSUES WERE THERE, WHEN IS NO..."NO", AND THAT THE TRIAL COURT AND THE COURT OF APPEALS REQUIRING CITIZENS TO GET CONFRONTATIONAL WITH POLICE ON THE SIDE OF THE ROAD. NOT ONLY IS THAT BAD IT'S AN INCORRECT READING OF PRECEDENT AND REALLY BAD PUBLIC POLICY. SEE CARMOUCHE V. STATE 10 S.W. 3d 323 (TEX. CRIM. APP. 2000) AND EVEN THOUGH

Wright made conclusory statements about the fact that he was considering the totality of the circumstances, including Appellant's body language, he was unable to actually offer any evidence whatsoever as to what other factors indicated to him that Appellant was giving consent. There was no showing that Appellant clearly and unequivocally consented to the search of his vehicle. An officer's mistake about the law, or about the legal significance of undisputed facts, even if eminently reasonable, cannot serve to provide probable cause or reasonable suspicion; it cannot, in other words, validate an otherwise invalid seizure. State V. Duran, 396 S.W. 3d 563 (Tex. Crim. App. 2013)

Although the Federal Constitution only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the State to show

By clear and convincing evidence that the consent was freely given. Ibarra, 953 S.W. 2d at 245. If the record supports a finding by clear and convincing evidence that consent to search was free and voluntary, we will not disturb that finding. See Johnson V. State, 803 S.W. 2d 272, 287 (Tex. Crim. App. 1990), overruled on other grounds, Heitman V. State, 815 S.W. 2d 681, 685 (Tex. Crim. App. 1991). Carmouche V. State, 10 S.W. 3d 323, 331 (Tex. Crim. App. 2000) We hold that the record does not support the court of appeals' finding of clear and convincing evidence that appellant's consent, if given at all, was free and voluntary. On the side of a darkened highway, appellant was closely surrounded by four police officers who had him backed up against the hood of his car. Officers told appellant to turn around and put his hands on the car. Only after appellant had assumed such position, and as he was

REACHING FOR APPELLANT'S PANTS, DID WILLIAMS "ASK," "MIND IF I PAT YOU DOWN AGAIN?" MOREOVER APPELLANT WAS NEVER TOLD DURING THIS EXCHANGE THAT HE HAD A RIGHT TO REFUSE CONSENT. SEE SCHECKLOTH, 422 U.S. AT 248-49, 93 S. CT. AT 2059 (a) [333] THOUGH NOT DISPOSITIVE, SUBJECT'S KNOWLEDGE OF RIGHT TO REFUSE CONSENT IS ONE FACTOR TO BE TAKEN INTO ACCOUNT WHEN CONSIDERING VOLUNTARINESS). FINALLY, APPELLANT HAD ALREADY BEEN SEARCH ONCE INVOLUNTARILY DURING THE EARLIER TERRY FRISK. TAKEN TOGETHER WITH ALL OF THE OTHER CIRCUMSTANCES, THIS COULD HAVE LED A REASONABLE PERSON TO CONCLUDE THAT THE SECOND SEARCH, LIKE THE PREVIOUS [25] ONE, WAS NOT OPTIONAL.

OPINION BY MEYERS FROM THE MEEKINS CASE: I KNOW THAT THE STANARD IN THIS CASE IS CLEAR AND CONVINCING, BUT I CERTAINLY DO NOT KNOW WHAT IS CLEAR AND CONVINCING ABOUT

APPELLANT'S ALLEGED CONSENT. ALTHOUGH THE MAJORITY GIVES LIP SERVICE TO THE APPLICABLE RULE, THE MAJORITY MISAPPLIES IT BECAUSE THESE FACTS ARE ANYTHING BUT CLEAR AND CONVINCING.

THE STATE HAS THE BURDEN [39] OF PROVING BY CLEAR AND CONVINCING EVIDENCE THAT THE ALLEGED [468] CONSENT IS VOLUNTARY AND FREE OR, IN OTHER WORDS, POSITIVE, UNEQUIVOCAL, AND WITHOUT COERCION. STATE V. IBARRA, 953 S.W. 2d 242, 245 (TEX. CRIM. APP. 1997) (EN BANC). THUS, THE CRITICAL INQUIRY ON APPEAL IS WHETHER THE EVIDENCE PRESENTED AT THE SUPPRESSION HEARING FAIRLY SUPPORTS THE TRIAL COURT'S FINDING OF FREE AND VOLUNTARY CONSENT BY CLEAR AND CONVINCING EVIDENCE. CLEAR AND CONVINCING EVIDENCE IS DEFINED AS " EVIDENCE INDICATING THAT THE THING TO BE PROVED IS HIGHLY PROBABLE OR REASONLY CERTAIN" OR "THAT MEASURE OR DEGREE OF PROOF

which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[2] It is a burden of proof that is less than beyond a reasonable doubt but greater than a preponderance of the evidence. Although the evidence need not be undisputed to satisfy the standard, "the proof must weigh heavier than merely the greater weight of credible evidence." State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979). Only when the state meets this threshold in proving consent may the evidence obtained from the subsequent search be introduced [40] at trial, so an appellate court will not disturb a finding of free and voluntary consent if the record supports that finding by clear and convincing evidence. Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). (1) Black's Law Dictionary 457 (7th ed. 2000). (2) Young v. State 648 S.W.2d 2, 3 (Tex. Crim.

App. 1983) (quoting State v. Addington, 588 S.W.2d 569 (Tex. 1979)).

These facts fail to prove by clear and convincing evidence that Appellant's words or actions could be perceived as positive and unequivocal consent by an objectively [42] reasonable person. The video indicates Appellant's significant evasiveness and reluctance. As the majority acknowledges, "Officer William's [final] question is hardy a model of clarity, and Appellant's answer is fraught with ambiguity." Appellant's response of "I guess," or "Yes," [469] could be interpreted to mean that he did, in fact, mind if the officer searched his car or, instead, that he failed to listen to the last question and answered the prior question affirmatively. And when that specific question and answer are viewed in the context of the entire exchange between Officer Williams and

APPELLANT, THE VACILLATION AND HESITANCE OF APPELLANT'S RESPONSES CREATED AN OVERALL SENSE OF UNCERTAINLY, RATHER THAN THAT OF A POSITIVE AND UNEQUIVOCAL CONSENT. THIS IS PARTICULARLY EVIDENT WHEN CONSIDERING OFFICER WILLIAMS INSISTENT TONE, THE RAPID-FIRE NATURE OF THE QUESTIONING, THAT APPELLANT WAS NOT INFORMED THAT HE COULD REFUSE TO CONSENT, AND THE ABSENCE OF MIRANDA WARNINGS. SEE SCHNECKLOTH V. BUSTAMONTE, 412 U.S. 218, 226-27, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (STATING THAT WHETHER THE DEFENDANT WAS WARNED THAT HE NEED NOT CONSENT TO FURTHER QUESTIONING OR THE SEARCH OF A VEHICLE AND WHETHER THE POLICE ADMINISTERED [43] MIRANDA WARNINGS ARE AMONG THE FACTORS TO CONSIDER IN ASSESSING THE VALIDITY OF THE ALLEGED CONSENT). THERE MAY BE A POSSIBILITY THAT APPELLANT'S RESPONE COULD HAVE BEEN UNDERSTOOD AS CONSENT, BUT STILL, THE EVIDENCE FALLS BELOW THE REQUIRED STANDARD OF

CLEAR AND CONVINCING EVIDENCE.

In Conclusion, It Is Hard To Believe That The Trial Court Could Conclude That It Was Highly Probable Or Reasonably Certain That Appellant Voluntarily Consented To The Search Of His Car In This Case. Officer Wright Never Gave Miranda Warnings And Appellant Was Not Told That He Could Refuse To Consent To The Search. The Trial Court, Court Of Appeals, And Officer Wright Determined That Appellant Gave Consent Through The Totality Of The Circumstances, But Record Shows Differently. All Officer Wright Was Able To Offer Were Vague Answer Which Does Not Constitute Facts That Are In The Record. Officer Wright's Uncertainly And Hesitation Clearly Shows Inconsistanly With The Fact Finder Which Was Used To Determine That Appellate Gave Consent. The Courts Also Rely On The Appellant Demeanor,

Cooperation, and nonverbal language, as part or in whole, of the determination on totality of the circumstances. Appellant argues, when does the appellant rights heard? The appellate simply says "I, mean, yeah", "well, I mean, yeah", "yeah", "yes", I do mind the officer searching his car. The trial and court of appeals stress that citizens get confrontational with the police which could be bad for the citizen and police officer which is bad public policy, an incorrect reading of precedent. Because there was no showing that appellant clearly and unequivocally consented to the search of his vehicle, appellant's motion to suppress should have bee granted. Trial court abused its discretion in failing to do so, and the judgement of the appellant court should be reversed and the case remanded.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, APPELLANT PRAYS THAT THIS COURT OF CRIMINAL APPEALS WILL REVERSE THE JUDGEMENT OF THE COURT OF APPEALS AND ENTER A JUDGEMENT OF ACQUITTAL.

# UNSWORN DECLARATION

THE UNSWORN DECARATION THAT IS TRUE AND A CORRECT COPY OF THE APPELLANT'S PETITION FOR DISCRETIONARY REVIEW IS FOWARD TO, BY MAIL, THE CLERK OF THE COURT OF CRIMINAL APPEALS, ON THIS DAY 13 OF JUNE, 2016. P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

RESPECTFULLY SUBMITTED,

JERETE M. VALDEZ #1989137

*[signature]*

PD-0535-16



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-15-00907-CR

### JERETE MICHAEL VALDEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

## On Appeal from the 199th Judicial District Court
## Collin County, Texas
## Trial Court Cause No. 199-81833-2014

## MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and Schenck
Opinion by Justice Stoddart

Following a bench trial, Jerete Michael Valdez was convicted of burglary of a habitation and sentenced to twenty-five years' confinement. Valdez filed a motion to suppress evidence prior to trial, which the trial court denied. In a single issue, Valdez asserts the trial court abused its discretion by denying his motion to suppress. We affirm the trial court's judgment.

BACKGROUND

Valdez was driving a Cadillac DeVille when he collided with a moped. While working at the scene of the accident, Officer Charles Wright of the Plano Police Department observed some suspicious items in Valdez's car. Wright saw a gas-powered pressure washer and several large tool boxes in the backseat. He testified: "And what made 'em [sic] suspicious was the way that they were hastily placed inside the backseat, and they were covered in dust and so forth and

looked like they . . . had been picked up from . . . some sort of area that they wouldn't have been used on a regular basis." Wright also noted the tool boxes were stacked haphazardly. Valdez told Wright some of the tools belonged to him and the power washer belonged to his father. As they talked, however, Valdez's explanation about the tools changed and he told Wright the tools belonged to other people with whom he worked.

Wright sought consent to search the car. He testified:

> Q. At some point did you ask the defendant if you could look inside his car to confirm that the items in the car were what he said they were?
> A. Yes.
> Q. Or something to that effect.
> A. Yes.
> Q. Okay. And do you remember specifically what it was that you asked him?
> A. I asked him if he minded if I looked inside his car in order to verify whether or not the items were his.
> Q. And what was his response?
> A. He - - he stated something along the lines of, "well, I mean, yeah;" which indicated to me that he was giving consent to look inside his vehicle.
> Q. And where were you standing at that time?
> A. Directly in front of him.
> Q. Okay. And in relation to the defendant's car, where were the two of you located?
> A. I believe we were towards the rear, like towards the trunk area on the passenger's side, in the grassy area next to the curb.
> Within ten feet, probably, of the vehicle.
> Q. Did you ultimately go and search the defendant's car?
> A. I did.

Wright also testified that although he did not remember the specific gestures, Valdez indicated with his hands and shoulders that Wright could search the car; "Just everything indicated to me that it was a positive response." Wright said Valdez "was compliant, cooperative. He gave no indication that he did not want me to look inside the car."

Valdez did not object to Wright opening the car door and did not attempt to tell Wright that he had denied Wright's request to search the car. Valdez's body language did not change

when Wright began the search; he remained compliant. After Wright searched the car, the police determined the tools were stolen.

The trial court watched the video from Wright's patrol car.

LAW & ANALYSIS

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.* We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and demeanor as well as purely legal questions de novo. *Id.* As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence, including all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). When, as here, there are no written findings explaining the factual basis for the trial judge's decision, we imply findings of fact that support the ruling so long as the evidence supports those implied findings. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).

In a hearing on a motion to suppress evidence, the defendant bears the initial burden of proof to demonstrate the search and seizure occurred without a warrant. *Bishop v. State*, 85 S.W.3d 819, 821 (Tex. Crim. App. 2002). Once the defendant demonstrates a warrantless search occurred, the burden shifts to the State to prove a warrant existed or an exception justified the

–3–

warrantless search given the totality of the circumstances. *Id.* at 822. A search conducted with voluntary consent is one such exception. *Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003).

The validity of consent to search is a question of fact to be determined from all the circumstances and the State must show by clear and convincing evidence that the consent was valid. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). The clear-and-convincing-evidence standard "deals with the quantity and quality of evidence to establish that a person did, in fact, consent to a search." *Meekins*, 340 S.W.3d at 459 n.24. It does not concern the "separate, but not legally determinative, issue of 'how' a person consented—clearly, convincingly, positively, unequivocally, and so forth." *Id.* "A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent." *Id.* at 458. Even mere acquiescence may support a finding of consent. *Id.* at 463–64 (quoting *State v. Kelly*, 204 S.W.3d 808, 820-21 (Tex. Crim. App. 2006)).

In the case before us, it is undisputed the police did not have a warrant to search Valdez's car. On appeal, the State asserts that although Valdez's answer to Wright's question about whether he minded if Wright searched the vehicle was ambiguous, the trial court could consider the totality of the circumstances, including Valdez's body language and behavior.

Wright testified he asked Valdez "if he minded if I looked inside his car," and Valdez replied "well, I mean, yeah." Valdez's response could mean he did mind if Wright searched the car, meaning he did not consent to the search, or it could mean he did not mind and was consenting to the search. Valdez's answer is not clear. However, Wright also testified Valdez indicated with his hands and shoulders that Wright could search the car, and Valdez's overall demeanor indicated Valdez consented to the search. Valdez was "compliant, cooperative. He

gave no indication that he did not want me to look inside the car." Further, the trial court watched the video from the officer's car and heard the exchange between Valdez and Wright, allowing the trial court to consider Valdez's tone of voice and demeanor.

Finally, once Wright began the search, Valdez did not object to Wright opening the car door, did not attempt to tell Wright that he had denied Wright's request to search the car, and did not complain he had denied consent to search. Valdez's body language did not change when Wright began the search; he remained compliant.

Valdez's words, body language, and general demeanor suggest that he did not refuse the request to search his vehicle. In light of the trial court's ruling on the motion to suppress, we may properly imply a finding by the trial court that Valdez's oral response to Wright's question, combined with Valdez's demeanor and nonverbal gestures, constituted consent. _See Meekins_, _340 S.W.3d at 461-65._ Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court did not abuse its discretion by concluding Valdez consented to the search. We overrule Valdez's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
150907F.U05

—5—



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JERETE MICHAEL VALDEZ, Appellant

No. 05-15-00907-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-81833-2014.
Opinion delivered by Justice Stoddart.
Justices Fillmore and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED.**

Judgment entered this 30th day of March, 2016.

JERETE M. VALDEZ

EASTHAM UNIT-TDC #1989137

2665 PRISON ROAD # 1

P.O. Box 16

LOVE LADY, TX. 75851

ATTN: ABEL ACOSTA, Cli
COURT OF CRIMIN
P.O. Box 12308, C
AUSTIN, TEXA